**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BONNIE PEAVY,**

**Plaintiff,**

**v.** **Case No.: 8:11-CV-0508-T-27EAJ**

**JACK KLAUSNER, et al.,**

**Defendants.**
_________________________________________/

## REPORT AND RECOMMENDATION

Before the court are Defendants' **Motion to Dismiss and/or Transfer** (Dkt. 4) and Plaintiff's **Response** (Dkt. 10).[1] An evidentiary hearing was held on July 22, 2011 (Dkt. 16). For the reasons stated below, the undersigned recommends that the motion to dismiss be granted and the case be transferred to the District of Arizona.

### Standard of Review

The exercise of personal jurisdiction over a nonresident is proper only if: (1) the forum state's long-arm statute confers jurisdiction; and (2) assuming jurisdiction would not "offend traditional notions of fair play and substantial justice." PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V., 598 F.3d 802, 807 (11th Cir. 2010) (citation and internal quotation marks omitted). The second step is analyzed only if the long-arm statute provides for jurisdiction. Id. A court must strictly construe the long-arm statute in assessing whether a plaintiff has satisfied its burden of producing affidavits, documents, or testimony that overcome a defendant's evidence challenging personal jurisdiction. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996) (citations omitted).

[1] The District Judge has referred the motion to the undersigned for a report and recommendation (Dkt. 14).

Where, as here, personal jurisdictional is determined after an evidentiary hearing, the plaintiff must establish the requisite jurisdictional facts by a preponderance of the evidence. Tommy Bahama Gp., Inc. v. Eagle, No. 3:09-cv-641-J-32JRK, 2010 WL 3340538, at *2 (M.D. Fla. Aug. 23, 2010); Resolution Trust Corp. v. Pharaon, 915 F. Supp. 351, 358 (S.D. Fla. 1996); Welt Indus., Inc. v. Weingart, Inc., 660 F. Supp. 424, 425 (N.D. Ga. 1987). With this standard in mind, the court reviews the complaint's allegations, the affidavits submitted in connection with the motion to dismiss, and the testimony and exhibits offered at the evidentiary hearing.

**Plaintiff's Allegations**

Plaintiff, a Florida resident, brings claims of negligence and breach of fiduciary duty against attorney Jack Klausner ("Klausner"), the personal representative of the estate of Dr. Max Hair ("Dr. Hair"), Plaintiff's deceased husband. Plaintiff also brings a claim for legal malpractice, alleging that Klausner advised Plaintiff that he was representing Plaintiff as well as the estate. Plaintiff names Klausner and his law firm as Defendants to each claim.[2]

Defendants represented Dr. Hair in an acrimonious divorce action involving Plaintiff, who was represented by separate counsel. Dr. Hair died before the divorce was finalized. Defendants also prepared a will leaving the vast majority of Dr. Hair's estate to Plaintiff and naming Klausner as the estate's personal representative.

Prior to his death, Dr. Hair was hospitalized for mental health issues. Although the treating psychiatrist found Dr. Hair incapable of making decisions at the time, Defendants prepared a document in which Dr. Hair gave Defendants his power of attorney. Defendants then executed

[2] The allegations collectively refer to "Defendants" making it difficult to assess whether they reflect conduct by Klausner, his firm, or both.

several documents to purchase properties and take other actions on Dr. Hair's behalf.

After Dr. Hair died, Defendants contacted Plaintiff to advise that they were representing both the estate and Plaintiff. They did not have Plaintiff sign a written fee agreement and did not disclose inherent conflicts of interest in representing both Plaintiff and the estate.

Defendants failed to comply with provisions of Dr. Hair's will requiring them to satisfy Dr. Hair's outstanding obligations. They executed documents under Dr. Hair's power of attorney, and directed Plaintiff to execute documents, including mortgages, that caused Plaintiff to incur debt exceeding $1,000,000.

Plaintiff was damaged when Defendants failed to ensure that all of the estate's debts were paid, caused the estate and Plaintiff to incur debt (including mortgages on property), and failed to advise Plaintiff that she could eliminate debt.

**Klausner's Affidavit Evidence**

Klausner represented Dr. Hair in his Arizona divorce proceeding and was the personal representative of Dr. Hair's estate, which was probated in Arizona. Defendants did not represent Plaintiff in the probate proceeding, to which Plaintiff was not a party.

**Plaintiff's Affidavit Evidence**

Dr. Hair purchased properties located in Florida and West Virginia while he was mentally ill. Klausner knew that Dr. Hair was mentally ill, but declined to use Dr. Hair's power of attorney to prevent the purchases.

After Dr. Hair died, Klausner advised Plaintiff that he was the personal representative of the estate and Plaintiff's attorney, without disclosing conflicts of interest. Klausner failed to advise that he lacked the legal skills to serve as personal representative of the estate and would eventually have

someone replace him in that role without introducing that person to Plaintiff or advising Plaintiff of that person's qualifications.

Klausner also failed to ensure that Plaintiff incurred no debt in connection with the Florida and West Virginia properties. Rather, Klausner told Plaintiff that settlement of the estate required her assumption of mortgages on those properties. Plaintiff explained that she did not want the properties and their associated debt but Klausner insisted that Plaintiff had to assume the mortgages.

All of Klausner's relevant communications with Plaintiff occurred via telephone calls, U.S. mail, and electronic communications that Plaintiff received in Florida.

**Plaintiff's Testimony**

Plaintiff and Dr. Hair were parties to an Arizona divorce proceeding when Dr. Hair died in October 2005. Later that month, Plaintiff discharged Melvin Sternberg, the Arizona attorney who represented her in the divorce proceeding. In November 2005, Klausner called Plaintiff to advise that he was the personal representative of Dr. Hair's estate and Plaintiff's attorney. The following month, Plaintiff advised Klausner that Sternberg no longer represented her.

At the time Dr. Hair died, the estate included one property in Florida and one in West Virginia. Plaintiff assumed a mortgage on the West Virginia property, but did not assume a mortgage on the Florida property; rather, she discussed the latter with Klausner and it was disposed of within weeks.

**Klausner's Testimony**

Klausner was ethically barred from acting as both the personal representative of Dr. Hair's estate and attorney for Plaintiff, a beneficiary of the estate. Klausner did not represent Plaintiff or advise her that he was her attorney. In December 2005, Klausner received a letter in which Plaintiff

advised that she wanted Klausner to communicate with her directly instead of through Sternberg, her former attorney in the divorce action.

Before Dr. Hair died, and at Dr. Hair's request, Klausner used Dr. Hair's power of attorney to sell two properties located in Florida and recover a portion of a deposit on another property located in Florida. When Dr. Hair died, the estate included no property located in Florida.

In 2009, the estate had two assets/liabilities. One was a partnership worth approximately $9,000,000 that generated approximately $100,000 per month in income for the estate. The other was a piece of property in West Virginia for which the estate made quarterly mortgage payments. Klausner advised Plaintiff that she had three options to settle the estate: (1) hold the West Virginia property until it was sold; (2) wait until money generated by the partnership satisfied the mortgage (eight to nine months); or (3) personally assume the mortgage. Plaintiff went to West Virginia and refinanced the property; Defendants acquiesced in Plaintiff's desire to do so and contacted a West Virginia attorney to open an ancillary estate.

## Analysis

## I. Personal Jurisdiction

Defendants submit that they should be dismissed from this case because this court lacks personal jurisdiction over them. Plaintiff responds that Defendants are subject to personal jurisdiction under section 1(b) of Florida's long-arm statute, Fla. Stat. § 48.193, which provides for jurisdiction over a nonresident who "commit[s] a tortious act within [Florida]."[3] Plaintiff correctly

[3] Plaintiff does not argue that Defendants are subject to personal jurisdiction under section 1(f) of Florida's long-arm statute. In any event, the preponderance of the evidence does not prove that Defendants' act or omission caused the requisite non-economic personal injury or property damage within Florida. See Sculptchair, 94 F.3d at 629.

points out that "telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b) if the alleged cause of action arises from the communications," Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002), and that section (1)(b) can confer jurisdiction over a nonresident defendant whose out-of-state tort causes injury in Florida. See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 257 (11th Cir. 1996).

Nonetheless, section 1(b) does not confer jurisdiction on all occasions where a nonresident defendant's out-of-state tort causes injury in Florida, but only "in certain instances." Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1168 & n.7 (11th Cir. 2005) (citing Korman v. Kent, 821 So. 2d 408, 411 (Fla. 4th DCA 2002)). "While a defendant's physical presence in the state is not required, it is not, however, enough that the actions of a defendant committed outside of Florida ultimately have consequences in Florida..... Instead, his actions must directly cause injury or damage within the state." Blumberg v. Steve Weiss & Co., 922 So. 2d 361, 364 (Fla. 3d DCA 2006) (citing Korman, 821 So. 2d at 410-11).

Plaintiff's affidavit states that she reluctantly assumed mortgages on Florida and West Virginia properties at Klausner's insistence. Yet Plaintiff admitted at the evidentiary hearing that her affidavit was incorrect and that she did not assume any mortgage on a Florida property, but only on property in West Virginia. Notwithstanding this discrepancy, Plaintiff maintains that Defendants' actions injured her in Florida because she was a resident of Florida during the relevant period. Because Defendants did not directly cause injury or damage to Plaintiff within Florida, Plaintiff's cited cases are inapposite.

In Robinson, for instance, a Florida plaintiff alleged that nonresident attorneys negligently drafted a will and trust documents. 74 F.3d at 257. Emphasizing that the attorneys intended for

these documents to be administered in Florida under Florida law, the court found that section 1(b) conferred jurisdiction because the attorneys' alleged malpractice damaged a Florida estate. Id. Here, by contrast, the estate was governed by Arizona law and probated in Arizona. See Harris v. Shuttleworth & Ingersoll, P.C., 831 So. 2d 706, 708-09 (Fla. 4th DCA 2002) (distinguishing Robinson on similar grounds).

In Horizon, an investment fund hired a California accounting firm to audit the fund's year-end financial statements. 421 F.3d at 1164-65. Although the accounting firm performed these tasks in California, it also agreed to monitor the fund's portfolio manager by accessing, monitoring, and managing the fund's Florida-based accounting system via the internet and communicating findings to the fund's officials in Florida. Id. After the fund's portfolio incurred substantial losses, the fund filed suit against the accounting firm for fraudulently misrepresenting that it would monitor the portfolio manager and perform related back office services. Id. at 1166, 1168. Emphasizing that the accounting firm had affirmatively represented that it would perform these tasks, the court found section 1(b) conferred jurisdiction over the accounting firm. Id. at 1168-69. Here, there is no evidence that Defendants ever promised to perform any relevant task in Florida, via the internet or otherwise, and Plaintiff does not bring a fraud claim.

Insofar as Plaintiff brings claims for negligence and breach of fiduciary duty, the facts of this case are more congruent with those in Harris, where a Florida resident who was the beneficiary of an Iowa trust that included Iowa property brought suit against an Iowa law firm for negligently handling the trust proceeds. 831 So. 2d at 707. The law firm prepared a document for the plaintiff's execution and sent information to the plaintiff relating to the Iowa property. Id. Moreover, the firm attorney who drafted the trust traveled to Florida at least once in connection with the Iowa property.

Id. Nonetheless, section 1(b) did not confer jurisdiction over the firm. Id. at 709. As the court pointed out, merely communicating or transferring documents to or within Florida in connection with out-of-state transactions does not per se support jurisdiction under section 1(b). Id. at 708.

Insofar as Plaintiff brings a claim of legal malpractice, the jurisdictional facts of this case are similar to those in Hirsch v. Weitz, 16 So. 3d 148 (Fla. 4th DCA 2009), where a Florida plaintiff alleged that a New York attorney's malpractice compromised the plaintiff's rights under a martial settlement agreement. Id. at 148-49. Although the plaintiff lived in Florida when he signed the agreement, the agreement was governed by New York law, and the agreement and final judgment of divorce were entered by a New York court. Id. at 151. The former wife brought suit in New York to recover under the agreement and obtained a money judgment in her favor, which she domesticated in Florida. Id.

Finding that any injury was sustained in New York when the former wife obtained a money judgment, the Florida appellate court concluded that Florida's long-arm statute did not confer jurisdiction because any legal malpractice tort accrued in New York. Id. The court declined to predicate jurisdiction on the attorney's allegedly negligent communications from New York to Florida, reasoning that to do so would permit "virtually any lawyer who communicated with a Florida resident regarding legal advice [to] be sued for legal malpractice in Florida." Id.

Here, Klausner's communications into Florida while acting as personal representative of Dr. Hair's estate, even assuming he also acted as Plaintiff's attorney in connection with the estate,[4] are insufficient to subject him to personal jurisdiction under section 1(b). See Hirsch, 16 So. 3d at 151-

[4] The court finds it unnecessary to resolve the credibility dispute between Plaintiff's and Klausner's testimony as to whether Klausner said he was Plaintiff's attorney in the estate matter; the credibility of the testimony does not affect the outcome of Defendants' motion.

52; Harris, 831 So. 2d at 708; see, e.g., Koock v. Sugar & Felsenthal LLP, No. 8:09-CV-609-T-17EAJ, 2010 WL 1223794, at *4-5 (M.D. Fla. Mar. 25, 2010). To hold otherwise would impose personal jurisdiction over any nonresident personal representative of a non-Florida estate with a Florida beneficiary alleging negligence or breach of fiduciary duty, or over any nonresident attorney whose Florida client alleges malpractice in connection with an out-of-state matter. See Hirsch, 16 So. 3d at 151. "If the [Florida] Legislature intended for [section 1(b)] to encompass all tortious acts which were complete outside Florida but ultimately have consequences here only because a Florida resident suffers damages, ... it would be incumbent on the Legislature to make that statutory purpose clear in the plainest of language." Korman, 821 So. 2d at 411.

Plaintiff has not shown by a preponderance of the evidence that section 1(b), or any other section of Florida's long-arm statute, confers jurisdiction over Defendants.[5] Consequently, this court may not exercise personal jurisdiction over Defendants.

## II. Transfer

"Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631. Transfer is appropriate where a claim would likely be time-barred if renewed in the proper district court. See ITT Base Servs. v. Hickson, 155 F.3d 1272, 1276 (11th Cir. 1998). Given that the events alleged in the complaint occurred as early as 2005, there is a reasonable

[5] As Plaintiff has failed to establish jurisdiction under the long-arm statute, there is no need to analyze whether assuming jurisdiction would "offend traditional notions of fair play and substantial justice." PVC Windoors, 598 F.3d at 807. Moreover, there is no need to address Defendants' contention that Plaintiff has failed to state a claim.

probability that Plaintiff's claims would be time-barred if dismissed and renewed in another court. Consequently, the interest of justice warrants transferring this matter to another court. See 28 U.S.C. § 1631.

## Conclusion

Plaintiff has failed to demonstrate by a preponderance of the evidence that Florida's long-arm statute confers jurisdiction over Defendants. Therefore, this court may not exercise personal jurisdiction over Defendants. The interest of justice favors transferring this matter to another court rather than dismissing Plaintiff's claims. Plaintiff requested this at the hearing, as an alternative to dismissal, and Defendants did not object. See 28 U.S.C. § 1631.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) Defendants' Motion to Dismiss and/or Transfer (Dkt. 4) be **GRANTED**; and

(2) This matter be **TRANSFERRED** to the District of Arizona, where Defendant Klausner resides and where the Defendant law firm is located.

**Date: August 3, 2011**

ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge